UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.



-against-


_____

_____

_____
Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes     ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.      PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name                          Middle Initial            Last Name

Street Address

County, City                                          State                      Zip Code

Telephone Number                              Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Name

Address where defendant may be served

County, City                                  State                      Zip Code

Defendant 2:

Name

Address where defendant may be served

County, City                                  State                      Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State               Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_____
Name

_____
Address

_____
County, City                    State               Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐   **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☐   race: _____

   ☐   color: _____

   ☐   religion: _____

   ☐   sex: _____

   ☐   national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.   Adverse Employment Action

The defendant or defendants in this case took the following adverse employment
actions against me (check only those that apply):

- ☐  did not hire me

- ☐  terminated my employment

- ☐  did not promote me

- ☐  did not accommodate my disability

- ☐  provided me with terms and conditions of employment different from those of
  similar employees

- ☐  retaliated against me

- ☐  harassed me or created a hostile work environment

- ☐  other (specify): _____

  _____

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should
explain what actions defendants took (or failed to take) *because of* your protected
characteristic, such as your race, disability, age, or religion. Include times and locations, if
possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed
with the U.S. Equal Employment Opportunity Commission, the New York State Division of
Human Rights, the New York City Commission on Human Rights, or any other government
agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? _____

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☐   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? _____

When did you receive the Notice? _____

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☐   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

| |
|---|
| Street Address |

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

    If you do consent to receive documents electronically, submit the completed form with your
    complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at [www.pacer.uscourts.gov](www.pacer.uscourts.gov) or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) ([www.pacer.uscourts.gov](www.pacer.uscourts.gov)) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____


_____
Name (Last, First, MI)

_____
Address            City              State             Zip Code

_____
Telephone Number              E-mail Address

_____
Date              Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

## **FACTS RELEVANT TO ALL CLAIMS**

1.      I have a disability as that term is defined under N.Y. Exec. Law §§ 290 to 297,

2.      Specifically, I have an anxiety disorder which can result in tachycardia, and panic attacks in stressful situations.

3.      On March 19,2021, the NYCDOE assigned me to work at PS 006 West Farms (located in district 12) as an ATR (Absent Teacher Reserve) teacher until April 19, 2019.

4.      Around April 3, 2019, I had a meeting with Principal Tiawanna Perez and Assistant Principal, Victor Garcia. During the meeting, Tiawanna Perez made it clear that she wanted to hire me, I respectfully told her that I was not interested in the position. She responded with, "I don't think, you can tell me no and is this what you want to do with your life (referring to my being in the ATR pool).  Also, during this meeting, we discussed a Kindergarten teacher, I believe her name is Ms. Weston. I was covering said teacher's classroom because she was out due to an injury she sustained because a student pushed her. They acknowledge that the student pushed the teacher; however, they started laughing and claiming that she was lying about being injured and they were going to block her ILODI

5.      On April 5, 2019, Tiawanna Perez reached out via phone to a past work colleague and friend to inquire about me.

6.      On or around April 9, 2019, after dismissing my class, I spotted Principal Tiawana Perez and tried avoiding her, but she accosted me in the cafeteria by saying, 'Why are you avoiding me Ms. Borjas. We ended up talking for over twenty minutes, again I told her I was not interested.

7.      On or around April 15, 2019, Principal Tiawana Perez accosted me in the hallway once again, saying, "I reached out to HR and they told me I could hire you, so you can't tell me no. I told her only a principal from district 11 can hire me without my permission.

8.      On April 15, 2019, NYCDOE sent me my new assignment. I was assigned to PS. 24 located in Bronx, Riverdale for the rest of the 2018- 2019 school year.

9.      On April 17, Principal Steven Schwartz sent me an email welcoming me to his school.

10.      On April 18, Principal Steven Schwartz sent me my assignment for the remainder of the 2018-2019 school year.

11.      April 19, 2019, was my last day at PS 006

12.      On April 22-26, 2019, we had Easter break.

13.      On April 29, 2019, I started working at PS.24 in my new assignment.

14.      On April 30, whilst on lunch break, I checked my email and saw an email dated April 30, 2019, from Principal Tiawana Perez claiming that I was permanently placed in her school by Human Resources. I immediately went to Principal Steven Schwartz, who stated, "I asked for one of the best ATR and Randy Archer recommended you." He called Randy Archer (Director of ATRs), who explained to him that I had to report to the assignment, because he received an email from the principal of PS 006 requesting to hire me. I stated that I did not agree to work with principal Tiawanna Perez. Mr. Archer told me that I must go to the assignment; however, I can file I grievance if I did not agree to the hire.

15.      On April 30, 2021 I reached out to Mike Sill, UFT Special Representative, he told me he had never heard of a case like this, but not to worry about it, because a principal from District 12 is not allowed to hire me without my consent. He wanted to know if I completed any paperwork. I replied, no. He said to give him a few days, he needed to call someone in the NYCDOE to resolve the issue.

16.      On May 1, 2019, I sent an email to Krystal John, payroll secretary of PS. 006 letting her know that I will be absent from work.  I also called the NYCDOE ATR department to inquire how and why I was placed at PS 006. The Rep I spoke to stated that on April 24, 2019, Principal Tiawanna Perez sent an email requesting to hire me.

16.      On May 2, 2019, I sent an email to PS 006 letting them know I will be absent.

17.     On May 3, 2019, I sent an email to PS 006 letting them know I will be absent from work. I also informed them that I would be taking medical leave. The stress along with the fact that

18.     On or around May 6, 2019, Mike Sill told me that Principal Tiawana Perez is refusing to let me go. He also stated that I was improperly hired by principal Perez and her refusal to let me go is unheard of and not normal, so he recommended that I immediately request a transfer. Learning that Principal Tiawanna Perez would let me go and that she took unusual steps to hire me was causing a lot of stress and worry, so I did exactly what Mike Sill suggested.

19.     On or around May 15, 2019, I requested a transfer accommodation from the NYCDOE.

20.     On or around May 16, 2019, Mike Sill said I needed to file a grievance, so he referred my case to Dianne Mazzola, UFT Special Representative, who filled the grievance on my behalf.

21.     On or around May 18, 2019, my accommodation transfer request was denied.

22.     On May 20, 2019, I attended my step 1 grievance meeting. Present were Assistant Principal Susan Aker, who took the notes for the meeting and UFT representative, Allison Parker. During the meeting, Principal Perez admitted to writing the April 24 email, but stated that she did not state that I agreed to work with her or presented any such paperwork. She also stated something to the effect of, who do you think you are, you don't get to choose, I could get your fired, you better get your leave approved in five days or else I will fire you. Being threatened with termination and the principal's unhealthy attachment towards me was causing great stress and worry, so I suffered a panic attack during the meeting. I apologized for the panic attack and explained that I suffer from anxiety disorder, and that this experience reminded me of another traumatic experience and respectfully asked Principal Tiawanna Perez to return me to the ATR pool.  She told me that she will never return me to the ATR pool.

23.     On May 29, 2019, and without regard for my disability in an email denying my grievance, principal Tawanna Perez stated that I suffered from anxiety, and attempted to color me as unstable. Because two other people were copied on the email, I respectfully asked. principal Perez to remove all references to my anxiety because it was a violation of HEPA.

24.     On September 3, 2019, whilst awaiting my level two grievance decision I returned to PS 06. When I arrived, I went directly to the teacher's lounge, I realized that being in the building

was stressful. Consequently, I told Assistant Principal Garcia and a District Liaison Yolando that I was going back home due to my anxiety, because being around Principal Perez was causing stress and triggering my anxiety. Victor Garcia offered me accommodation and told me to sit in the back. I did not sit in the extreme back of the auditorium but in the row behind a group of teachers. Whilst I was sitting there, Ms. Perez referenced a current event, where an employee killed several co-workers (The Odessey shooting). She then said, "A lot of people are mentally ill and a lot of them are working with you, and you don't know it. You don't know when they will kill you."

25.     On September 9, 2019, during a staff meeting, I suffered another panic attack, so I left the meeting, then I sent AP Garcia a text letting him know that I was still in the building.

26.     On September 10, 2019, the next day, and shortly after I arrived at work, I was told by AP Garcia that I had a disciplinary meeting, and my Union Rep had already been notified. At 1:00pm, I was called into a meeting with AP Victor Garcia, AP Susan Aker, and UFT rep Allison Parker. During that meeting, I was confronted, threatened, and criticized by Victor Garcia for my panic reactions on September 3rd and September 9. I respectfully explained I suffered from anxiety and could become Tachycardic and instructed them to call the ambulance if this happens, and that Principal Perez's unwelcome attention was causing great stress, but Mr. Garcia continued with more threats and confrontation.  He told me that I choose to have anxiety and if continued saying I suffered from anxiety I will have to go downtown to medical to be evaluated This confrontation triggered a severe panic attack that caused me to temporarily lose the ability to speak, compelling Ms. Aker to suggest that I go into the bathroom, where I tried using an anxiety technique to lower my heart rate, which was dangerously high. When I returned to the meeting, I asked Victor Garcia to stop, He did not, so I left. With staff members and parents watching, I stumbled into the hallway, then into the main office to punch my timecard, and finally walked out of the building. Because I had a debilitating panic attack, I left work for the remainder of September 10 and September 11. At around late afternoon on September 10, 2019, and within an hour of leaving the school building, I received a health safety check call from the UFT.

27.     On September 16, 2019, I received a letter to file charging me with insubordination for my panic responses. The letter to file also stated that I stated that Principal Tiawanna Perez triggers my anxiety and that that my responses violated NYCDOE workplace policy and notified me that I could be terminated.

28.     On September 17, 2019, I was assigned to work with classroom teacher Ms. Zoldesesky, a lead teacher. Within minutes of arriving at the classroom, Ms. Perez showed up and sat across from me. She stayed for roughly 30 minutes. She just sat there.  Considering that this was a highly effective teacher, and the observation cycle would not start until October 17, 2019, it was clear that she was there to purposefully trigger my anxiety in front of the students.

29.     Tiawanna Perez retaliated against me for taking my protected Medical leave from May 1-June 30 , 2019. On September 20, 2019, I did not get my scheduled pay cheque; Payroll Secretary, Krystal John was instructed not to enter my then-pending medical leave for the period of May 1 through June 30, 2019, as "Medically Certified" pending my leave approval, which is the process instead, she entered them as unauthorized absence, which resulted in my having to wait months later to be paid, which caused a lot of stress and financial hardship. I notified Superintendent Jaquline Rosado of this unlawful conduct.

30.      On September 26, 2019, I sent an email complaint to Superintendent Jaquline Rosado stating that Tiawanna Perez purposefully tried to trigger my anxiety in front of students. The superintendent dismissed my concerns and took no action.

31.     On October 02, 2019, after bringing the class I was covering to the auditorium for a celebration, Victor Garcia physically removed me from the auditorium and took me out to the school yard, where I sustained injuries because of a baseball.

32.     On October 03, 2019, I sent an email to Assistant Principal Susan Aker, with a copy to Victor Garcia, advising of the incident with the baseball and the injury I sustained to my shoulder when I tried to protect myself from being hit in the head with the baseball. I referenced that Garcia witnessed the incident and spoke to the student. I also stated that I will be applying for my LODI leave.

33.     On or around October 06, 2019, Ms. Sepulveda, UFT Special District Rep reached out to me because she realized that I was marked absent on April 29 - 3O, 2019. Those were the two

days I worked at PS. 24. I told her that the secretary of PS. 24 sent my attendance for those two days to Krystal John, payroll secretary, and that I even sent Ms. John an email confirming the days. I reached out to Krystal John to correct the record, but she refused, so the Union filed a grievance, one day before the grievance hearing Krystal John partially corrected my attendance for those days. I notified Superintendent Jaquline Rosado of this unlawful conduct.

34.     Rather than taking my concerns seriously, Superintendent Jaquline Rosado retaliated against me for repeatedly filing complaints of unlawful conduct.  On October 26, 2019, I received via certified mail a letter from Superintendent, Jaqueline Rosado instructing me to report to NYCDOE Medical Bureau for a mental evaluation. The letter cited my panic. responses that occurred on September 3, 2019, and September 9, 2019, my filing my improper placement grievance, and my filing a LODI claim, as reasons for said evaluation request, . Preparing to go for a mental evaluation was extremely stressful on my mental health and caused severe depression.

 35.     On November 06, 2019 when I arrived for my mental evaluation, I was in extreme mental distress, because I was worried about meeting with a psychiatrist whom I did not know and who had the authority to probe into my personal life; After waiting for about an hour, a medical doctor called me into his office with my Union Rep, he said he wanted to know what was going on with Principal Tiawanna Perez and I, after explaining the events that led up to that moment, the doctor told me that this thing with the principal sounded personal and was not cause for a mental evaluation, he then left the room to speak with the psychiatrist after he returned to the room, he said the psychiatrist was in agreement, he then examined my shoulder, reviewed my MRI result, then concluded that I was severely injured and recommended even a longer time home than my Orthopedic doctor recommended.

36.     Superintendent Jaquline Rosado further retaliated against me for reporting unlawful conduct. On or around November 20, the NYCDOE medical Bureau sent me an email notifying me that the Superintendent had placed an administrative hold on my ILODI.

37.     Rather than taking my LODI complaint seriously, Tiawanna Perez retaliated against me. She sent a letter to interfere with my compensation benefits. On November 27, 2019, Principal Tiawanna Perez sent me a certified letter dated November 25, she stated, "Your LODI leave request for period October 3, 2019- January 29, 2020, has been denied." She stated that I must

either resign or apply for a restoration of health leave. This was all fabricated. In October of 2023, the union learned that my leave for the aforementioned dates was actually approved on November 06, 2023. Also, on or around December 11, 2019, I reported Victor Garcia and Tiawanna Perez to OSI for interfering with my LODI case.

38.     On or around February 5, 2020, I sent a complaint to the school's chancellor regarding Tiawana Perez's unhealthy attachment towards me, the September 10, 2019, disciplinary meeting when Victor Garcia confronted and threatened to have me mentally evaluated for my disability, and the improper mental evaluation request.

39.     On February 10, 2020, I returned to work at PS 006, I was given a push in intervention program with the first grade.

40.     On February 12, 2020, I was contacted by OSI representative Susan Cumberbat Clasp, she said she would be investigating my discrimination complaint. She wanted a copy of the mental evaluation request along with the November 25, 2019, certified letter about my LODI.

41.     On or about February 12, I visited AP Aker's office, because I need help to organize my new assignment. On or about February 13, 2020, I went back to AP Susan's office for help; however, she stated that I needed to be careful, because Tiawanna Perez instructed specific staff members to watch me, because I am dangerous or not a well person, something to that effect. She stated that she got a call from Tiawana Perez who was absent from work most of that week. She stated that Ms. Perez yelled at her for meeting with me alone and wanted to know what was discussed.

42.     On or about February 24, 2020, only a few days after returning from protected medical leave and reporting Victor Garcia to OSI for withholding witnesses' statements in my LODI case, Victor Garcia gave me an ineffective observation rating. Victor Garcia came into Ms. Simmons and Ms. Hughes classroom to conduct an observation of Ms. Simmons lesson; however, after less than five minutes of observing Ms. Simmons, he came over to the group of students that I was working with and getting to know. Students I only met two days prior. That evening by 6:00pm he sent me a detailed ineffective observation report. I responded to the email and copied both the superintendent and Tiawanna Perez. I told him that I was being treated differently from

other teachers and that he had a pattern of discriminating against me and that he threatened to have me mentally evaluated.

43.     After protesting this retaliatory observation report, On February 25, 2020, in an email, he withdrew the observation report.

44. On or about February 28, Susan Clasp reached back out, she said after reading the November 25, 2019, letter she wanted proof that I was not found mentally unfit, because that was the implication in Tiawanna Perez's November 25, 2019, letter.

45.     On or around March 3, Susan Clasp decided that there was no evidence of discriminatory conduct.

46.     On March 4, 2020, when I met up with LODI UFT Rep Nelson Luceane for my LODI hearing, he told me that Principal Perez was trying to get me terminated, because I was found to be mentally ill. He also told me that I will have to prove to the LODI hearing officer that I was not found to be mentally ill by the medical bureau. He said that's what the principal is telling everyone. I was worried that this vicious false rumor was going to interfere not only with my LODI hearing, but my career.  During the meeting when the issue of my mental stability came up, I spent roughly twenty minutes explaining that I was not found to be mentally ill by the NYCDOE medical bureau and ask that Tiawanna Perez who was present via phone stop saying I was found mental unfit. Also, during the meeting, the superintendent representative stated that Victor Garcia investigated my claim, and no one witnessed my getting injured. Instead, they provided statements saying I was not injured.

47.     On March 16, 2020, all teachers were sent emails on how to set up their Remote classrooms; however, I was not included on those emails. Teachers were getting ready for remote instruction.

48.     On March 18, 2020, I reached out to UFT, Stephen Goldberg via email, I informed him that they were not giving me the information to set up my Google classroom.

49.     Mr. Golberg told them they had to give me a remote class and instructed me to send them an email. On March 18,2020 I sent Victor Garcia an email requesting an account to set up my Google classroom. On March 20, 2020, he sent me an email with information on how to set up

my google classroom; however, he also wrote, "Ms. Aker will be sending you updates during this remote learning/instruction time."

50.     On March 2O, 2020, in response to my email inquiry as to why I was not included on emails, Principal Perez sent AP Aker an email explaining that I was not allowed to be included on any emails containing other teachers' information. As per Principal Tiawanna Perez's instructions, AP Aker occasionally forwarded emails from the principal.

51.     On April 8, 2020, when I attempted to attend my grade team meeting, team leader, Mr. Tores told me that he could not let me in the meeting. Similarly, the Ela coach and math coach did not invite me to their meetings and training. The school's secretary excluded me from all professional emails that were sent to the staff, the UFT rep excluded me from all emails. I was the only teacher who was not notified that there was a covid case in our school.

52.     From March 20, 2019 to June 2019, the school held two meetings per week, a staff meeting and a professional development meeting. I was excluded from those.

53.     On June 4, Chancelor's Professional Development Day, AP Arker sent me a separate assignment from the rest of the staff. The other teachers had a whole day of professional development and training.

54.     I was excluded and segregated and isolated from the staff until September 8, 2020

55.     On September 8, 2020, I had an uncomfortable meeting via cell phone with AP Victor Garcia. He informed me that he was my Direct Supervisor for the 2020 – 2021 school year.

56.     On September 08, Principal Tiawanna Perez misused special education funds and gave me an inclusion class to teach by myself from September 2020- May 2021

57.     On September 8, 2020, in retaliation for making protected complaints I was given class 3d6, an inclusion class to teach by myself. As per New York State Law in an inclusion classroom, general education teachers and special education teachers work together to meet the needs of students. The only problem is that I was the only teacher assigned to teach class 3d6, whilst all the other ICT classes had both teachers. Also the upper grades were departmentalized, so each class had two teachers and a teacher who came in to teach math; our grade had a Math

departmentalized teacher, Ms. Domes, but she was not allowed to teach my class. However, after I was terminated, the class was given to two teachers.

58.      On September 14, 2020, I sent an email to Principal Tiawanna Perez, because discovering that Victor Garcia was my direct supervisor caused several panic attacks and worry. As a result, I respectfully asked Principal Perez for a different supervisor. I pointed out that Victor Garcia threatened to have me mentally evaluated and withheld witnesses' statements in my LODI hearing.

59.      On September 15, 2020, without regard for my disability, Principal Tiawanna Perez denied my request.

60.      In an act of retaliation, On September 16,2020, Victor Garcia showed up to my Google Classroom, stayed for fifteen minutes when he was about to leave, He stated, Goodbye Ms. Borjas, Love you Ms. Borjas. He waited for me to say goodbye, I reluctantly said, "Goodbye Mr. Garcia." This whole experience was sexually inappropriate, and a great source of stress. After logging off, I was in a constant state of panic and excessive worry, so I immediately reached out to several Principals via phone call and emails. The excessive worrying resulted in several panic attacks.

61.      On September 17, 2020, Because Victor Garcia inappropriate sexual comment was a great source of stress, so I complained via email. I informed Superintendent Jaqueline, UFT District Rep, Stephen Goldberg, and Tiawanna Perez

62.      On September 18, 2020 via the NYCDOE system and via email, I requested a transfer to another school.

63.      On September 18, 2020, Victor Garcia sent me an email demanding full access to my classroom, this only increased my level of worrying.

64.      On September 21,2020 NYCDOE denied my transfer request.

65.      On September 22, 2020, Victor Garcia sent me another email demanding full access to my classroom.  This ongoing harassment caused constant worry and panic attacks.

66.      On September 24, 2020, Victor Garcia sent me another email demanding teacher access to my Google.

Classroom.

67.     On September 24, 2020, without regard for my sexual harassment complaint, and my anxiety Tiawanna Perez sent an email demanding that I give Victor Garcia teachers access, even though she could have easily given it to him herself because she had access. This severely impacted both my physical and mental health, it caused several me to have several panic attacks.

68. On or around October 10, 2020, I reached out to Susan Aker for help; however, she informed me that she is no longer allowed to help me, because Principal Perez made it clear that I was only allowed to reach out to and work with Victor Garcia. Being able to reach out to Susan Aker for help was very important, because she helped with many things.

69.     In retaliation for making protected complaint, On October 16, 2020, I had my first disciplinary meeting with Victor Garcia, the person, I made the protected complaint against. Tiawanna Perez stated that she is aware of my transfer request, but until then I must work with Victor Garcia. The meeting abruptly ended due to technical issues and was rescheduled for October 19,2020.

70.     In early October, Sambhi Sheep, OSI investigator reached out to me about my sexual harassment complaint, I told her that the sexually harassing comment felt tormenting and intimidating and was causing a lot of stress. I requested a transfer and an investigation.

71.     On October 19, 2020, Tiawanna Perez resumed the disciplinary meeting and demanded an explanation as to why I was not communicating with Victor Garcia. When I repeatedly stated that he was sexually inappropriate, she asked him to excuse himself from the meeting. I informed Tiawanna Perez that Victor Garcia was sexually inappropriate when he visited my classroom on September 16, and respectfully asked for another supervisor, without regard for my sexual harassment complaint, Tiawanna Perez stated, "Mr. Garcia will continue being your direct supervisor".

72.     On or around October 24, 2020, I received the October 24, disciplinary meeting notice, informing me that could be terminated because of failure to comply with the supervisory directives of Victor Garcia. There were several false allegations made as well. After receiving this disciplinary letter to file, I was still desperately trying to leave, because I knew they were starting to build a case for my termination.

73.     Roughly two weeks later, Tiawanna Perez notified me via email that she will be handling my OSI referred case.

74.     On November 4, 2020, I attended the OSI referred meeting with Tiawnna Perez, she asked if I withdrew my originally complaint, and I made it clear that I didn't and that it was sexual harassment, and I wanted an investigation. She stated that she was charged with investigating both the sexual harassment complaint and the September 10, 2019, disciplinary meeting.

75.     On November 5, 2020, without regard for my complaint and NYCDOE attendance protocol Victor Garcia sent me an email inquiring as to why I was not at work.

76.     On November 18, 2020, Tiawanna Perez sent out an email to the entire staff regarding tracking student's attendance, because teachers were still not clear on the attendance protocol.

77.     I retaliation for making protected complaint, on November 20, 2020, I had my second disciplinary meeting with Victor Garcia and Tiawana Perez

78.     On November 20, 2020, within an hour or two of my disciplinary meeting, I received an email from Tiawana Perez copied to a NYCDOE lawyer stating that my sexual harassment complaint against Victor Garcia was unsubstantiated. So, the same day she unsubstantiated my complaint, she held a disciplinary meeting with me for not following the directives of Victor Garcia. She made no mention of the September 10, 2019, meeting.

79.     On or around November 24, 2020, I received the November 20, 2020, disciplinary meeting notice, informing me that I could be terminated because of failure to comply with the supervisory directives of Victor Garcia, I was also falsely charged with not completing my report cards on time.

80.     In retaliation for making protected complaint, On November 30, 2020, without regard for my complaint Victor Garcia sent me another harassing email, falsely stating that my attendance has not been completed since October 14, 2020. This was false because Susan Aker was responsible for attendance. She sent me an email every evening regarding outreach to parents whose children were absent, she also copied Victor Garcia on these emails.

81.     In retaliation for making a protected complaint, on December 10, 2020, I had my third disciplinary meeting with Tiawanna Perez. It was linked to Victor Garcia's November 30th email, I was also falsely charged with not communicating with parents.

82.     On or around December 22, 2020, I received the December 10, disciplinary meeting notice, informing me that I could be terminated because of failure to comply with the supervisory directives of Victor Garcia and failure to communicate with parents. This was another made-up accusation. These three retaliatory disciplinary meetings are significant because without them, they would not have a pre-text for termination.

83.     On January 8, 2021, Victor Garcia visited my Google Classroom, he conducted an informal observation. That night he sent me a response. It was negative from start to finish. It violated the NYCDOE, and Union contract it did not have one positive feedback.

84.     On January 11, 2021, Victor Garcia showed up at the Third Grade Team meeting. He wanted to know the roadblocks that each teacher was experiencing, because this topic was not on our agenda, I was reluctant to speak, so I did not say a word.  Victor Garcia then asked me what were my roadblocks thus far? Just like the other teachers I spoke of students who were struggling with their attendance. On January 12, 2021, I received a very long email from Victor Garcia, it had the same format as the November 30, email. The format was to show that I was not in communication with him. He stated, I looked back at emails, and I do not find any communication about this issue. He was talking about the students I mentioned at the Grade meeting. He wanted a detailed plan on how I intended to address the roadblocks.

85.     On January 13, 2021, I reached out to members of my team to see if they had to develop a detailed plan; they said, no.

86.     On or around January 13, 2021, because being singled out was a great source of stress, I asked him to stop harassing me. I sent an email to Victor Garcia, copied on the email were Superintendent Jaquline Rosado, Tiawnna Perez, Steven Goldberg, Sambi Sheep, and the schools Chancellor. I pointed out that he already knew about the students he mentioned, because those were the very students who were discussed in the December 10, 2020, meeting and that some of those students were not provided. devices by the school. It was obvious that they were using the same students to repeatedly discipline me, but never planned on helping those students.

87.     On or around January 14, 2021, Tiawanna Perez responded and demanded that I explain how I intended to support those students. However, she did not demand this of the other teachers. During this time, I was nominated for the 2020-2021 Big Apple Award.

On or around January 15, I responded to Tiawanna Perez, I pointed out that the school did not have a schoolwide system for dealing with low performing students; however, I was currently using the exact same system as the rest of the Third-grade teachers.

88.     On January 20, 2021, Víctor García sent me an e-mail stating that he reached out to all the students' parents regarding their attendance issues

89.     On March 10, 2021, Principal Perez conducted an informal observation and rated me ineffective. In her observation report, she stated that I was not servicing the needs of several students. The problem here is that Tiawana Perez was the one who denied the students their services when she did not provide the second teacher who should have been present during that observation.  I was terminated before I was given the opportunity to have a formal observation or placed on any plan of support. An opportunity that must be provided to all teachers based on the contract.   On March 16, 2021, I was sent an email from the UFT stating that my improper placement grievance cannot be successfully brought to arbitration, I did not see this email until three months later, so I was not able to appeal the decision. However, it is obvious that that Principal's Perez malicious rumor that I am a mentally ill person played a role in this decision.

90.     On March 17, 2021, Victor Garcia sent me another email inquiring as to why I was not at work. Because this was the third email asking such a personal question, I sent him an email telling him that such a personal question makes me uncomfortable, so please stop harassing me. I mentioned his sexually inappropriate comment, his mental evaluation threat, and him withholding witnesses' complaints to interfere with my LODI compensation. I copied Superintendent Jacqueline Rosado, UFT Rep Stephen Goldberg, and Chancellor Miesha Porter.

91.     On March 24, 2021, two days after confronting Victor Garcia about his sexually inappropriate comment and mental evaluation threat, he showed up to my classroom to observe me, seeing him immediately triggered my anxiety, compelling me to ask my students to log off, because I was not feeling well. Both my students and AP Jaoui logged off, but Victor Garcia stayed on and confronted me. He physically sat up in an intimidating posture, came closer to the

screen and stared me down. The confrontation triggered a severe panic response; I logged off in tears.

92.     On March 26, 2021, I informed Chancellor Miesha Porter, Superintendent Jacqueline Rosado, Stephen Goldberg, and Sambhi Sandeep that Victor Garcia came into my classroom and confronted and intimidated me which resulted in my suffering a panic attack and ending my lesson. I also referenced both my previous discrimination and sexual harassment complaints.

93.     On Friday, April 9, 2021, the same day I filed a special education complaint and roughly 12 days after reporting Victor Garcia's discriminatory behavior, I received my discontinuance letter, with an official termination date of June 7, 2021.

94.     On April 23, 2021, I was absent; however, the school administration did not properly supervise my class on that day. They did not take their attendance until after school was over. The attendance teacher sent me an email requesting attendance for my class. It was only then that Victor Garcia went online to get a record of the students who wrote online that morning.

95.     On April 26, 2021, when I returned to my online classroom, parents and students complained that the students were neglected on that day. Also, several students posted questions, but no one responded to them.

96.     On April 27, I reported what happened to the Superintendent, because this was the third time that the students of class 3d6 were purposefully neglected by the administration.

97.     On April 29th I was observed during math.

98.     On May 3, 2021, I was observed during math.

98.     On May 5, 2021, I was observed during math.

99.     On May 5, 2021, I had a scheduled disciplinary meeting.

100.    On May 5, 2021, I was informed that I will be receiving a formal observation, because I was rated ineffective on my March 10 observation. Also, they were only observing me in math, the subject they knew I had no experience teaching.

101.    I was retaliated against for filing a complaint about Victor Garcia discriminatory conduct towards me and reported the neglect of the students of class 3d6. On May 6, 2021, I had a disciplinary meeting, I was being disciplined for leaving my google classroom on March 24, 2021. I was charged with dereliction of duty.

102.     Because I felt threatened, intimidated, and retaliated against and thus extremely concern about other false accusations Tiawanna Perez might make against me, my emotional state began worsening. I began suffering mental and physical symptoms of extreme anxiety. On May 20, 2021, I took a medical leave and resumed therapy. My doctor submitted a letter stating that I suffered from Generalized anxiety disorder and the harassment was causing great stress.

103.     On June 7, 2021, I was terminated.

104.     On March 3, 2022, the UFT informed me that they will not be pursuing my ILODI, so I appealed the decision.

105.     On March 15, 2020, UFT Liaison Stephen Swieciki stated that when he first presented my ILODI case he thought this was about some mental health issue that I was having, because that's what the principal was putting out there. He requested the original medical report that was given to me by NYCDOE medical bureau. He wanted to prove that I was not found to be mentally unfit. I sent it to him; consequently, my case went to arbitration.

106.     On June 22, 2022, I won an arbitration award, so Superintendent Jaquline Rosado administrative hold was removed and my ILODI was recommended for finalization.

107.     On or around June 24, 2022, I reached out to Krystal John regarding my Spring 2020 arbitration pay, but to date I have not gotten paid.

108.     On November 19, 2022, the NYCDOE medical Bureau finalized my ILODI, however I was not compensated for the period I was out, so I repeatedly reached out to UFT Rep, Mr. Bennet, who repeatedly reached out to the NYCDOE. At one point, NYCDOE HR told me that I was already compensated based on the information they saw in the system.

109.     In February 2023, Victor Garcia finally submitted a statement stating that he witnesses the incident in my ILODI claim. He also submitted the school aids statement that he withheld during my March 4, 2020, LODI hearing. He did not submit the statements of the students who were involved in the incident.

110.     On October 6, 2023, I notified the UFT that I wanted to file a grievance regarding getting compensated for my ILODI. I went to see Ms.  who uncovered that the payroll secretary of PS 006 entered my ILODI that was approved on November 6, 2019, as not approved/ awaiting

clearance. Hence, why I was not compensated and still not compensated for the injuries I sustained three years ago.

111.    On November 13, 2023, during an Appeal Conference hearing, Principal Tiawanna Perez stated that she separated me from the staff because of my erratic behaviors.

## COUNT 1
## DISABILITY DISCRIMINATION

112.    I herein incorporate by reference all allegations previously set forth in this complaint, the same as if set forth verbatim herein

113.    I have a disability as that term is defined under NYSTL

114.    I was otherwise qualified to perform my job requirements, with or without reasonable accommodation.

115.    . I requested reasonable accommodation when I asked Victor Garcia to stop threatening me with a mental evaluation and to remove from all documents that I was the one who stated that I wanted to go downtown to medical for a mental evaluation. I requested reasonable accommodation when I asked Victor Garcia not to charge me with professional misconduct and insubordination for my panic response. I requested reasonable accommodation when I asked Victor Garcia not to charge me with neglect of duty and professional misconduct because I left the September 9, 2O19 professional development because of my anxiety. I requested reasonable accommodation when I asked Victor Garcia to stop the September 10, 2019, disciplinary meeting. I requested a reasonable accommodation when I asked Tiawanna Perez to stop spreading a vicious rumor that I was found mentally ill by the NYCDOE medical bureau.

116.    They discriminatorily denied, ignored, or otherwise disregarded my request in violation of NYSL.

117.    I was subsequently discriminatorily terminated in violation of NYSL

118.    As a direct and proximate result, the Defendants conduct described herein. I have suffered and continuing to suffer from a loss of income and benefits and emotional distress and mental anxiety, all for which I should be compensated.

WHEREFORE: I demand judgment against Defendants as follows:

A.  For actual damages, including but not necessarily limited to lost wages and benefits and emotional distress damages in an amount being just;

B.  For future lost wages and benefit

## **COUNT 2**

## **DISCRIMINATION BASED ON DISABILTY – DISPERATE TREATMENT**

**119.**    I incorporate, by refence, my allegations from each of the preceding paragraphs.

120.    I was an employee who suffered from generalized anxiety disorder protected from discrimination in employment on the basis of my disability/gender.

122.    It is an unlawful employment practice for an employer to discriminate against an employee, including discriminating against her in the terms and conditions of employment, based on the basis of her disability/gender

123.    I was discriminated against in the terms and conditions of my employment as outlined above, on the basis of my disability.

124.    Defendant unlawfully discriminated against me because of my disability with respect to the terms, conditions, and privileges of my employment, including but not limited to providing equal compensation, benefits, and job assignments, as other co-workers.

125.     As a direct and proximate result of Defendant's unlawful conduct, I suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, in but not limited to pain and suffering, and the loss of past and future salary, wages, benefits or privileges

**COUNT 3**

**SEXSUAL HARASSMENT AND HOSTILE WORK ENVIRNOMENT**

126.     I herein incorporate by reference all allegations previously set forth in this complaint, the same as if set forth verbatim herein

127.     At all times relevant herein, Defendant participated in the harassment of me by its harassing, discriminatory and retaliatory behavior toward me as alleged herein and/or substantially assisted, encouraged, and condoned the continued harassment toward creating a hostile work environment, and sanctioned and ratified the unlawful harassing conduct.

128.     After I reported Victor Garcia for making an unwelcomed sexually inappropriate comment Defendant subjected me to severe and/or pervasive harassment when they denied my accommodation request for a different supervise/school transfer, gave me three disciplinary letters to file for not communicating with Victor Garcia, and forced me to continue working with Victor Garcia, who continued to threaten, bully, and intimidate me to the point where both my physical and mental health were compromised. Any reasonable woman in my position would have found the environment to be hostile and abusive. The behavior was unwanted, without my consent, object to and offensive to me.

129.     As a direct and proximate result of Defendant's unlawful conduct, I suffered and will continue to suffer economic and non-economic compensatory damages for which Defendant is liable, in but not limited to pain and suffering, and the loss of past and future salary, wages, benefits or privileges.


## COUNT 4
## RETALIATION


130.     I herein incorporate by reference all allegations previously set forth in this complaint, the same as if set forth verbatim herein

131.     I engaged in protected activity when I confronted Victor Garcia about denying, ignoring, or otherwise disregarding my request for reasonable accommodation.

132.     I engaged in protected activity when I reported to Superintendent Jaquline Rosado about Tiawana Perez denying, ignoring, otherwise disregarding my request for reasonable accommodation

133.     I engaged in protected activity when I reported Tiawanna Perez's improper mental evaluation request to the school's chancellor.

134.     I engaged in protected activity when I confronted Tiawanna Perez about spreading a vicious rumor that I was found mentally unfit.

135.     I engaged in a protected activity when I reported that I was being segregated from the staff because of my disability.

136.     I engaged in protected activity when I reported Victor Garcia's inappropriate sexual comment.

137.     I engaged in protected activity when I reported Victor Garcia discriminatory conduct towards me when he visited my google classroom on March 24, 2021

138.     I engaged in protected activity when I reported Victor Garcia and Tiawana Perez for interfering with protected medical leave

139.    Defendant retaliated against me for engaging in a protected activity in violation of New York State Laws and New York City Laws

140.    Defendant retaliated against me for opposing unlawful employment practices in violation of NYSTL

141.    As a direct and proximate result, the Defendants conduct described herein. I have suffered and continuing to suffer from a loss of income and benefits and emotional distress and mental anxiety, all for which I should be compensated.

WHEREFORE: I demand judgment against Defendants as follows:

C.    For actual damages, including but not necessarily limited to lost wages and benefits and emotional distress damages in an amount being just;

D.    For future lost wages and benefit

## COUNT 5
## INTENTIONAL INFLLICTION OF EMOTINAL DISTRESS

142.     I herein incorporate by reference all allegations previously set forth in this complaint, the same as if set forth verbatim herein

143.    The conduct complained of above was outside the conduct expected to exist in the workplace, was intentional and malicious and done for the purpose of causing me to suffer humiliation, mental anguish, and emotional and physical distress. Defendant, and each of their conduct, in confirming and ratifying the complained of conduct, was done with the knowledge that my emotional and physical distress would thereby increase and was done with a wanton and reckless disregard of the consequences to me.

144.     As a proximate result of Defendant's conduct and by their intentional infliction of emotional distress as alleged herein, I have been harmed in that I have suffered humiliation,

mental anguish, and emotional and physical sickness, and have been injured in mind and health. As a result of said distress and consequent harm.

145.    Defendant, and each of them, engaging in the conduct as alleged herein, acted fraudulently, maliciously, oppressively and with reckless disregard of my rights and safety and thereby entitling me to an award of punitive damages. Defendant, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted fraudulently, maliciously, oppressively and with reckless disregard of my rights and safety and thereby entitling me to an award of punitive damages.

## COUNT 6
## RETALIATION FOR LEGALLY PROTECTED LEAVE

146.    I herein incorporate by reference all allegations previously set forth in this complaint, the same as if set forth verbatim herein

147.    At all times alleged herein, New State Labor Code: 215, was in full effect and binding on all Defendants.

148.    Pursuant to New York State Labor Code:215 I had a legal right to take job-protected medial leave, without retaliation from Defendant.

149.    As a result of my taking job-protected medical leave, I was retaliated against by Defendant.

150.    As a proximate result of Defendant's conduct and by their intentional infliction of emotional distress as alleged herein, I have been harmed in that I have suffered humiliation,

mental anguish, and emotional and physical sickness, and have been injured in mind and health. As a result of said distress and consequent harm.

151.    As a result of Defendant's unlawful acts, I am entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

152.     Defendant, and each of them, engaging in the conduct as alleged herein, acted fraudulently, maliciously, oppressively and with reckless disregard of my rights and safety and thereby entitling me to an award of punitive damages. Defendant, and each of them, authorized, ratified, knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted fraudulently, maliciously, oppressively and with reckless disregard of my rights and safety and thereby entitling me to an award of punitive damages.

## COUNT 7
## LIBEL PERS SE AGAINST TIAWANA

**153.**    Plaintiffs incorporate paragraphs 1-153 as if fully set forth herein

154.    On March 20, 2020, Tiawana Perez sent the following statement in an email to two persons.

The following false statement about me

      **a.  Stacy Borjas is not allowed to be on emails with other teacher's information.**

This false statement was published and sent to Assistant Principal Aker and Assistant Principal Victor Garcia

155.    This false statement was published with malice

156.    Tiwanna Perez acted with malice because she wanted to isolate and segregate me from the staff. She wanted to create the impression that I was mentally ill and dangerous. This false statement resulted in all staff members excluding me from team meetings and emails. People were afraid of me.

157.    Tiwana Perez wanted to destroy my personal and professional reputation

158.    I have been damaged by this false statement because the statement subjected me to hatred, distrust, ridicule, and disgrace.

159.    I have been damaged by this statement because the statement injured me in my profession.

160.    As a direct and proximate result of Defendant Perez's conduct, I have suffered, and continues to suffer, harm for which I am entitled to an award of monetary damages and other relief.

.

## COUNT 8

## SLANDER – DEFAMATION

**161.**    Plaintiffs incorporate paragraphs 1- 160 as if fully set forth herein

162.    Shortly after Tiawana Perez requested an Improper Mental Evaluation, she

Made the following false statement about me.

> **b.  That I was found to be mentally unfit by the NYCDOE medical bureau**
> **c.  That I was erratic and that I was dangerous and needed to be monitored.**

163.    This false statement was made to staff members, UFT members, NYCDOE employees. This statement was untrue and defamatory in that it falsely reported that I was found mentally unfit for work by the NYCDOE Medical bureau.

164.    Defendant Perez made such defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

165.    Defendant Perez's statement constitutes defamation because it impugned my professional fitness and abilities.

166.    Defendant Perez's defamatory statements constitute defamation because they accused me of being found mentally unfit for work.

167.    Defendant Perez's defamatory statement has harmed my professional reputation and standing in our industry, have caused economic harm, have caused me to incur damages in the for of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement and have caused embarrassment, humiliation, and emotional injury.

168.    As a direct and proximate result of Defendant Perez's conduct, I have suffered, and continues to suffer, harm for which I am entitled to an award of monetary damages and other relief.

169.    Defendant Perz's defamatory statements were malicious, willful, wanton, and done with reckless disregard for my rights. As such, I am entitled to an award of punitive damages.

170.    Defendant Tiawana Perez made defamatory statements with malice and with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the court enter judgment in her favor and against defendant containg the following relief:

A. **A** declaratory judgment that the actions, conduct and practices of defendant complained of herein violate the laws of the State of New York and the City of New York

B. Awarding Stacy Borjas all compensatory damages including consequential and incidental damages as a result of Defendants wrongdoing in an amount to be determined at Trial

C. Requiring Tiawanna Perez to make a public retraction of the false statements.

Such further relief this court deems just and proper.

### PRAYER FOR JURY TRAIL

Borjas prays for a Jury Trial on all issues so triable.

Date: December 11, 2023

Respectfully submitted:

Stacy Borjas PRO SE Litigant


By: Stacy Borjas

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**OFFICE OF FEDERAL OPERATIONS**

Stacy Borjas                                          )

Complainant,                                       )

                                                             )

vs.                                                         )

                                                             )

CITY OF NEW YORK,

DEPARTMENT OF EDUCATION,

TIAWANA PEREZ, VICTOR GARCIA

                Respondent

_____)         Agency Case No. 10213994

**I disagree with the decision made by the New York Division of Human Rights, because they incorrectly decided the facts and made no mention of my hostile work environment claim.**

I Stacy Borjas ("petitioner" or "Borjas") was hired by the NYC Department of Education ("DOE" or "respondent") as a Provisional teacher in 2002. In 2004 I became a regular appointed teacher and started working at M.S. 113. In June 2007, I got tenured under my Special Education certification. I began working as an Assistant Principal (AP) at M.S. 287 in August of 2009. After refusing to illegally change student's IEP, physically threatened, and sent profanity laced text message by Principal, Adrienne Phifer, I was discontinued as an AP in August 2013. I reverted to my prior position as a probationary General Education teacher and was placed in the absent teacher reserve (ATR). As per DOE policy a teacher who is in the ATR pool cannot receive tenure regardless of his/her effective pedagogical practice, consistent with that policy my probation period was extended by the district 11 Superintendent. These recommendations were made by ATR supervisors and three principals, the three principals who made these recommendations did so only after meeting me for two weeks to two months, they had no idea about my pedagogical practices, nor were they required to.  From September 2013 until April 2019, I worked in various schools where I received all satisfactory ratings and demonstrated effective pedagogical practice. After being rotated to P.S. 06 Tiawanna Perez inappropriately hired me on April 29, 2019, at which point, I was no longer an ATR. After objecting and grieving being inappropriately hired I was subject to disability discrimination, desperate treatment, sexual harassment, retaliation, defamation, and a hostile work environment and I was unfairly and discriminatorily "terminated" on June 07, 2021, in violation of the NYS Human Rights Law ( "SHRL"), Executive Law § 290, et seq.; and the NYC Human Rights Law ("CHRL"), NYC Administrative Code §§ 8-101, et seq.

On September 27, 2021, I filed a complaint with the New York State Division of Human Rights (Division) charging the DOE with unlawful discriminatory conduct, and in November 2021, the Division sent a Notice of Charge of Discrimination ("Discrimination Notice") to the DOE.  On October 17, 2022, during a phone call with a Human Rights Specialist, I wanted to discuss certain details about my case, but I was told that I couldn't because those issues were not part of my original complaint, so I would need to amend my complaint. The Specialist asked me to forward my original complaint again, after doing so, she realized that my complaint originally had 16pgs. She explained that someone made a mistake, because the Original Notice of Charge that was sent to the DOE only included the first three pages of my complaint. She sent an email to the director with my original complaint, they then sent out another Notice of Charge to the DOE in October 2022.

On June 7, 2023, The New York State Division of Human Rights issued a final decision finding no discrimination and no sexual harassment. The final decision determined the Division investigation did not support discrimination based on disability and that complaint was accommodated throughout her employment and that the Division investigation revealed Complainant had a long disciplinary history prior to her short tenure at the school at issue in this proceeding.  Except for the Victor Garcia accusation, the Division's final decision was based only on the first three pages of my complaint that they had original sent to the DOE. However, the Division incorrectly decided the facts, and made no mention of my hostile work environment claim and incorrectly stated that I amended my complaint when they were the ones who made a mistake.

1.  **I established a prima facie case of disability discrimination.**

I suffer from generalized anxiety disorder that can result in a sever tachycardic response.  I started my first therapy session in 2013 after I had to lock myself in my office to prevent Principal, Adrienne Phifer from physically assaulting me. Principal, Tiawanna Perez became aware of my disability when I suffered a panic attack during a grievance meeting in May 2019. The first time Principal Tiawanna Perez mentioned my anxiety was in an email responding to my grievance. I sent her an email asking her to remove the statements she made about my anxiety.  After my third panic attack on September 9, 2019, AP Victor Garcia threatened to have me mentally evaluated if I continued saying I suffered from anxiety and threatened me with termination for my panic responses. In October 2019, I was improperly recommended for a mental evaluation and then segregated from the staff for the rest of the 2020 school year.

2. **Although the DOE articulated a non-discriminatory reason for its actions, other evidence demonstrates that this articulated reason was more likely than not a pretext for disability discrimination**.

- **The evidence shows that I did not have years of poor pedagogical practice and misconduct.**

**T**he respondent stated in their position statement that consistent with my poor performance in the AP role, I failed to demonstrate effective pedagogical practice as a teacher over the course of many years, such that my probation period was extended by multiple superintendents at the recommendation of several principal from January 2015 to June 2021.

However, this explanation is contradicted by other evidence. Respondent position statements contain no evidence to prove that from September 2013 to April 2019, I received unsatisfactory observations, unsatisfactory ratings, disciplinary meetings, or had disciplinary actions taken against me. For example, they stated that my probation was extended because of poor pedagogical performance, but they did not provide the extension agreements or the unsatisfactory observations the principals used to make their determination, they also did not state how long I worked with each principal who extended my tenure. They also stated that multiple superintendents extended my tenure, however this would have been impossible considering that until I was inappropriately hired by district 12, I only worked in district 11, so only one superintendent extended my tenure when I was an ATR teacher. The respondent's responses contained no evidence of years of poor pedagogical performance or misconduct. Therefore, the evidence shows that the DOE articulated reason for terminating me was not its true reason but a sham or pretext to try to mask disability discrimination.

- **The extension of probation agreement between Superintendent, Jacqueline Rosado and I shows that my probation was not extended because of poor pedagogical practices.**

In the respondent's position statements their legal team repeatedly stated that I was terminated due to my extension agreements. However, this is contradicted by other evidence. Superintendent Jacqueline Rosado discontinuance letter and supporting evidence only included documentation from Principal Tiawanna Perez, she did not make any mention of my probationary history or even her own extension agreement as a consideration for termination.  For example, the documentation included the September 16, 2019, letter detailing my panic responses and other documentation from the 2020- 2021 school year. The Respondent's Position statement, however, shows that they

were the ones who first made the claim that I was terminated due to years of poor pedagogical performance that led to extension agreements. There is no evidence in the record supporting this claim. Respondent falsely claimed that a probation extension agreement means the teacher has a history of poor pedagogical practice and misconduct, which is not the case. Therefore, there is no valid, non-discriminatory explanation for why I was terminated. Based on the evidence, I established that the DOE reason for terminating me was more likely than not a pretext for disability discrimination.

- **Evidence from the probation of extension agreement shows that Superintendent Jacqueline Rosado breached the extension agreement when she discontinued my probation.**

 The agreement states: "the parties agree that the decision to either grant completion of probation, deny completion of probation, or grant an additional extension of probation to Stacy Borjas at a date no later than June 12, 2021, shall be based upon an evaluation of Stacy Borjas's probationary service during the additional probationary period herein granted and also upon an evaluation on Stacy Borjas's probationary service rendered prior to June 12, 2020."

However, the evidence shows Superintendent Jacqueline Rosado breached the extension agreement when she terminated me on June 07, 2021, because she only used documentation from the 2020-2021 probationary period. Hence why the Respondent in their Position statement falsely made the claim that I was terminated for years of poor pedagogical performance. Therefore, there is no valid, non-discriminatory explanation for why I was terminated. Based on the evidence, I established that the DOE reason for terminating me was more likely than not a pretext for disability discrimination.

- **The record shows that I was isolated, segregated, denied training, and denied professional development.**

Respondent stated in their original position statement that they terminated me because I failed to demonstrate, "despite support", effective pedagogical practice.   In response to my claim of not receiving any training, Respondent in their Position statement states that AP. Aker ensured that I had resources and e- mailed a link to the professional learning sessions. However, this statement is contradicted by other evidence. The investigation shows no evidence of support, I was not allowed to attend one single professional development meeting, team meeting, coaches meeting, or union meeting. The submitted text messages between the grade team leader Ms. Torres and I shows that the professional leaning sessions link was not used, instead, a new linke was created before each meeting or professional development and sent out to teachers. Coaches and the team leaders did not send me a link to their meetings as well. The secretary also excluded me from her mass emails. I was the only teacher who was not notified that there was a covid case in our school.  For example, the record reveals Tiawanna Perez sent an email on March 20, 2020, to Susan Aker informing her that I was not allowed to be on emails with other teachers. The record also reveals that Victor Garcia sent me an email on March 20, 2020, letting me know that moving forward, I would only be in communication with Susan Aker. The record also shows that the decision to isolate and exclude me happened after I filed a discrimination complaint against Principal, Tiawanna Perez. Therefore, the evidence shows that the DOE's articulated reason for terminating me was not its true reason but a sham or pretext to try to mask disability discrimination.

- **The evidence shows that I was given unfair working conditions and then disciplined for not doing a good job.**

I was given class 3d6 an inclusion class (ICT). As per New York State Law in an inclusion classroom, general education teachers and special education teachers work together to meet the needs of students.  I was the only teacher assigned to teach class 3d6, whilst all the other ICT classes had both teachers assigned, plus the SETTS teacher.   For example, Tiawanna Perez observation report claims, during the March 10, 2021, observation you displayed little or no understanding of the range of pedagogical approaches suitable to student learning of the content.  However, the record shows that class 3d6 was an inclusion class with students with IEPs who by law should have had a special education teacher present to work with me to offer the range of pedagogical approaches, she claimed were missing.  (ROI 130-135). The evidence shows that the students of class 3d6 were denied their mandated service and I was required to do a job by myself that required two people for nine months, whilst the other inclusion classrooms had two teachers. Therefore, there is no valid, non-discriminatory explanation for why I was terminated. Based on the evidence, I have established that the DOE articulated reason for not terminating me was more likely than not a pretext for sex discrimination.

- **The respondent's position statement shows that I received a satisfactory rating for the school year in question.**

Respondent stated in both position statements that I was discontinued due to poor pedagogical practices. However, I was rated satisfactory for the 2020-2021 school year. For example, the record reflects that at the time of my discontinuance Principal Perez had only conducted one observation.  In addition, the record reflects that I received the second observation in May 2021, one month after I was notified of my discontinuance. There is no evidence in the record showing that I have a history of unsatisfactory observations, or unsatisfactory ratings as a classroom teacher. To prove nine years of

poor pedagogical practice, the respondent produces zero unsatisfactory end of year ratings, and two unsatisfactory observations. One of which was completed after I was notified of my discontinuance, Therefore, there is no valid, non-discriminatory explanation for why I was discontinued by Superintendent, Jacqueline Rosado. Based on the evidence, I have established that the DOE articulated reason for terminating me was more likely than not a pretext for disability discrimination.

- **The evidence shows I had to go through an improper mental evaluation referral.**

Respondent stated in their position statement that Tiawanna Perez requested a medical evaluation because of the injuries I claimed to have sustained whilst doing yard duty.

However, that statement is contradicted by other evidence. The medical referral document contains the reasons for the referral. The document reveals that Tiawanna Perez wanted me to be mentally evaluated because of my panic response on September 3 and 9 of 2019. For example, the document reveals that Tiawanna Perez wanted me evaluated because I claim to suffer from anxiety and manifested behaviors that warranted a mental evaluation. The evidence reveals that my panic responses outlined in the September 16, 2019, email are the same panic responses Tiwaanna Prez gave as a reason for a mental evaluation referral   Therefore, the DOEs articulated reason for terminating me was not its true reason but a sham or pretext to try to mask sex discrimination.

- **The evidence shows that my LODI was inappropriately denied, and that Victor Garcia withheld witness statements from my LODI hearing.**

The Respondent stated, in their position statement, that my LODI was denied by Superintendent Jacqueline Rosado because of contradictory information contained in witnesses 'statements.

However, they also admitted that after I filed a grievance with my union (the United Federation of teachers (UFT) the arbitrator found that there was no contradictory information contained in witnesses' statements and sustained my grievance.  For example, in their second position statement the respondent provided both victor Garcia's statement and the statement of one other witness; however, when my LODI was denied Victor Garcia withheld both statements, claiming no one had witnessed the incidents.

- **The evidence shows that after I reported Victor Garcia inappropriate sexual harassment comment and requested a different supervisor, they did not investigate and my accommodation was denied, and I was forced to continue working with him.**

The evidence shows that withing a month of reporting Victor Garcia's sexually harassing inappropriate comment, I had three disciplinary meetings for not following the directives of Victor Garcia and received three written notices letting me know that I may be discontinued for not following the directives of Victor Garcia. The evidence also shows that I requested a transfer to a different school and when that was denied by the DOE, I requested a different supervisor, but that was also denied.

The evidence indicates that Victor Garcia was allowed to continue harassing me. For example, I was forced to attend a disciplinary meeting with Victor Garcia and forced

to explain why I was refusing to communicate with him. The evidence shows that Victor Garcia left the meeting after I stated that I was not communicating with him because he was sexually inappropriate. However, the evidence shows that the harassment continued and, on several occasions, I had to send Victor Garcia an email asking him to stop harassing me.

- **The evidence shows that I received my discontinuance letter 12 days after reporting to the Superintendent that Victor Garcia came into my classroom for the second time, intimidated me and caused me to suffer a severe panic attack.**

The record will show that after Victor Garcia came into my classroom for a second time and intimidated me to the point where I suffered a panic attack. I sent a complaint to Superintendent Jacqueline Rosado and the school's chancellor. The evidence will show that I received my discontinuance letter, twelve days after sending that complaint. There is no evidence in the record showing that my complaint was investigated. However, the evidence shows intentional discrimination as I was immediately terminated as a result of sending a complaint accusing Victor Garcia of triggering my disability. Based on the evidence, I have established that the DOE's articulated reason for terminating me was more likely than not a pretext for disability discrimination

- **The September 16, 2019, letter shows that I was discontinued for my panic responses.**

I was terminated for my panic responses.  For example, the record reflects that Tiawanna Perez and Victor Garcia interpreted my panic responses as an act of insubordination and misconduct.  For example, in the September 16, 2019, letter to file that was included as one of my discontinuance supporting documents, Victor Garcia states, on Monday September 9,2019, you engaged in professional misconduct, neglect of duty and insubordination when you left the Professional Learning session before end time of 3:40pm. The record shows that I left the meeting because I was experiencing a panic attack.  However, the record shows that I told Victor Garcia that I left the meeting because of a panic attack, in addition, the record reflects that Victor Garcia and Tiawanna Perez still interpreted my panic responses as an act of insubordination and misconduct, because they included them as one of the reasons of my termination. There is no evidence in the record showing that I do not suffer from generalized anxiety disorder. Therefore, there is no valid, non-discriminatory explanation for why I was terminated. Based on the evidence, I have established that the DOE's articulated reason for terminating me was more likely than not a pretext for disability discrimination

The acts which occurred during the 2019-20 and 2020-21 school years are sufficiently like the final act of discrimination of being terminated for my panic responses (September 16, 2019, letter to file). Thus, being isolated from the staff, denied professional development training, given unfair working conditions, improper mental/medical referral, being subjected to inappropriate sexually harassing comments, withholding witness statements in my LODI hearing, denial of benefits, denied accommodation request, denial of LODI leave, being assigned yard duty which weas inappropriate for my position, justify the conclusion that the acts were part

of a single discriminatory practice. See, Henderson v. Town of Van Buren, 281 AD2d 872, 874

(4th Dept. 2001) (my  claim is timely under the continuing violation doctrine when pre-limitation

harassing conduct was "sufficiently similar" to conduct within the limitations period); Sier v

Jacobs Persinger & Parker, 276 AD2d 401, 401-402 (1st Dept. 2000) (same); Louissaint-Tasco v

Brookdale Univ. Hosp. & Med. Ctr., 2017 NY Slip Op 30768(U), 2017 NY Misc. LEXIS 1401,

*25-26 (Sup. Ct. Kings Co. 2017).

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/05/2023

**To:** Stacy Borjas
4295 Webster Avenue
Apt 2D
Bronx, NY 10470

Charge No: 16G-2022-00225

EEOC Representative and email:      TIMOTHY RIERA
Deputy Director
TIMOTHY.RIERA@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
09/05/2023

Timothy Riera
Acting District Director