**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
STACY A. BORJAS,                                       :
                                                       :
                         Plaintiff,                    :            23-CV-10829 (OTW)
                                                       :
             -against-                                 :            **OPINION AND ORDER**
                                                       :
NEW YORK CITY DEPARTMENT OF EDUCATION :
et al.,                                                :
                                                       :
                         Defendants.                   :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.      **INTRODUCTION**

Now before the Court is Defendants' motion to dismiss Plaintiff's Third Amended

Complaint ("TAC"). (ECF 81). Plaintiff alleges 19 different Counts under, *inter alia*, the Americans

with Disabilities Act (the "ADA"), the Rehabilitation Act of 1979 (the "RA"), the New York State

Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). For the

following reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

II.     **FACTUAL HISTORY**

The Court assumes familiarity with the lengthy factual history contained within Plaintiff's

Complaint but will briefly summarize the relevant events below.[1]

---

[1] For purposes of deciding the Motion, the Court accepts as true all facts alleged by Plaintiff, (*see Krassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)) and draws all inferences in the Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

### A.      Plaintiff's Permanent Assignment to P.S. 006

Plaintiff alleges that she lives with three primary disabilities: generalized anxiety disorder, panic disorder, and ost-traumatic stress disorder. (TAC at ¶¶ 23-35). She was formerly employed by Defendant New York City Department of Education ("NYDOE") in the Absent Teacher Reserve ("ATR"), a pool of temporary teachers who rotate through various schools to help fill vacancies. (TAC ¶49).

On March 18, 2019, Plaintiff was assigned to a one-month ATR rotation at P.S. 006 where Defendants Tiawana Perez ("Perez") and Victor Garcia ("Garcia"), were the school's principal and one of its assistant principals, respectively. (TAC at ¶50). Plaintiff alleges that "over the next few weeks," Garcia and Perez "undertook a pressure campaign" to force Plaintiff to accept a permanent position at P.S. 006, which she declined. (TAC at ¶58).On April 29, 2019, Plaintiff began an assignment at another school, but was subsequently reassigned to a permanent ATR position at P.S. 006 a day later. (TAC ¶60). The reassignment purportedly caused Plaintiff a "severe flareup of her mental health disabilities," and prompted her to take unpaid medical leave from May 1 to June 30, 2019. (TAC ¶60).

### B.      Plaintiff's Return from Medical Leave

When Plaintiff returned to P.S. 006 in September 2019 at the start of the academic year, the tension with Garcia remained. During a staff meeting to discuss a recent school shooting, Plaintiff alleges that Garcia forced her "and another staff member" to sit in the back of the auditorium. (TAC ¶68). During that meeting, Garcia allegedly said "[a] lot of people are mentally ill and a lot of them are working with you, and you don't know it. You do not know when they

2

will kill you." (TAC ¶68). Plaintiff alleges she "reasonably understood" Garcia to be referring to her. (TAC ¶69).

Three days later, on September 9, 2019, Plaintiff had a panic attack during a staff meeting and left the meeting before it was over. (TAC ¶70). Plaintiff was subsequently written up for "professional misconduct and insubordination." (¶ 74). During the resulting disciplinary meeting, Garcia allegedly accused Plaintiff of "choosing" to be disabled. (TAC ¶73). Plaintiff left the school after that meeting and did not return the next day. (TAC ¶73). Plaintiff eventually returned to teaching[2] for a short time. In October 2019, Garcia "improperly"[3] reassigned Plaintiff from "auditorium duty" to "yard duty," where she was struck in the shoulder by a heavy book bag. (TAC ¶78) Plaintiff took line of duty injury leave the next day and did not return to work until February 2020. (TAC ¶79).

Plaintiff was ordered to report for a medical exam on November 9, 2019. (TAC ¶¶80-82). After receiving a letter that she was found medically unfit for duty, Perez informed Plaintiff that she must resign or request "restoration of health" leave. (TAC at ¶83).[4] Three months later, when Plaintiff returned from medical leave on February 5, 2020, Plaintiff filed a complaint about the November 2019 denial of leave letter with the NYDOE chancellor. (TAC ¶83). The school closed as a result of the COVID-19 pandemic shortly thereafter, forcing the transition to remote

---

[2] Plaintiff does not plead when in September she returned to work after failing to report on September 11, 2019. (TAC ¶73).

[3] Plaintiff does not plead any facts about her job duties or why "yard duty" was "improper." (TAC ¶78).

[4] It is not clear from the TAC what, if anything, Plaintiff did in response to this ultimatum. She only alleges that she returned from her "protected medical leave" in February 2020. (*See* TAC ¶84).

school. (TAC ¶¶ 85-90). The remote environment, however, did not alter what Plaintiff believed to be Garcia's harassing behavior toward her. *Id.*

### C.    Plaintiff Makes Several Complaints about Garcia and Is Subsequently Terminated

On September 8, 2020, Garcia informed Plaintiff that he would be her direct supervisor for the 2020 – 2021 school year. (TAC ¶89). Plaintiff immediately requested a different supervisor, but Perez refused. (TAC ¶¶91-92). In response, Plaintiff refused to grant Garcia or Perez access to her virtual classroom on several occasions in September and October of 2020. (TAC ¶94). When Garcia was able to observe Plaintiff teaching on September 16, 2020, he joined her virtual classroom for fifteen minutes. (TAC ¶92). Plaintiff alleges that, when he was leaving, he said "Goodbye Ms. Borjas. Love you Ms. Borjas." (TAC ¶92). Plaintiff reported this comment to Perez the next day. (TAC ¶93). Following another disciplinary meeting in January 2021, Plaintiff filed another complaint with the NYDOE alleging "disparate treatment" by Garcia. (TAC ¶100).

On March 10, 2021, Perez observed Plaintiff teaching and rated her as "ineffective." (TAC ¶101). On March 24, 2021, Garcia conducted another virtual observation of Plaintiff while she was teaching. (TAC ¶102). Plaintiff alleges Garcia's appearance "immediately triggered" her "anxiety-related disorders," which caused Plaintiff to immediately stop teaching and tell her students to log off. (TAC ¶102). Garcia did not log off of Plaintiff's virtual classroom and sat "with his face close to the screen" and "stare[d] [Plaintiff] down." (TAC ¶102). Plaintiff then logged off, "in tears and panic." (TAC ¶102).

On March 26, 2021, Plaintiff filed another complaint about Garcia's "conduct" to the school chancellor, Defendant Rosado, and others at the NYDOE. (TAC at ¶102). On March 30,

4

2021, Plaintiff received notice that her employment both at P.S. 006, and with the NYDOE, would be terminated effective on June 10, 2021. (TAC ¶103). On May 20, 2021, Plaintiff took medical leave again and did not return. (TAC ¶106).

On September 27, 2021, Plaintiff filed a Complaint with the New York Division of Human Rights ("NYDHR"). (TAC ¶115). She received her Notice of Right to Sue letter on or about September 17, 2023, and filed her initial Complaint on December 12, 2023, which was docketed at ECF 1 the next day.

After Plaintiff obtained counsel, she filed a Second Amended Complaint (ECF 52) and then, with Defendants' consent, the TAC. (ECF 81[5]). The parties consented to magistrate judge jurisdiction on December 11, 2024. (ECF 67). Defendants moved to dismiss the TAC on April 11, 2025 (ECF 90), Plaintiff opposed on November 20, 2025 (ECF 124), and the motion was fully briefed on December 12, 2025. (ECF 126).

### III.    LEGAL STANDARD

In reviewing a motion to dismiss under to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to sufficiently "raise a right to relief above the speculative level," it must be grounded on factual allegations. *Twombly,* 550

---

[5] Plaintiff filed a redacted version of the TAC at ECF 82.

U.S. at 555. A claim grounded on mere suspicion is not enough to meet this standard. *Id*. "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555, 557) (internal citation omitted, alteration in original).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). In reaching its conclusions, the Court is aware that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here. *Hughes v. Ester Co.*, 930 F. Supp. 2d 439, 461–62 (E.D.N.Y. 2013) ("[I]ssues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss. . . .").

## IV.    DISCUSSION

### A.    <u>All Plaintiff's State and Common Law Claims Are Dismissed (Counts 10-19)</u>

Unrelated to her disability claims, Plaintiff has brought common law defamation and slander actions against the individual defendants (Counts 18 and 19). However, Plaintiff has abandoned those claims as time-barred. (*See* Pl.'s Opp., ECF 124 at 10 n.2).

Defendants argue that Plaintiff's NYSHRL and NYCHRL claims (Counts 10-17) are barred by the doctrine of election of remedies. (Defs'. Mem., ECF 90-5 at 19). I agree. The plain language of NY Exec. Law § 297(9) permits a claimant to choose either to file a NYSHR or

NYCHRL claim with the NYSDHR or in State Supreme Court. However, once a plaintiff brings a case before the NYSDHR, they may only appeal the agency's decision to the State Supreme Court. (N.Y. Exec. Law § 298). As Plaintiff elected to pursue her NYSHRL and NYCHRL claims through the NYSDHR, New York law bars her from bringing any NYSHRL or NYCHRL claims here. *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 126 (2d Cir. 2002). Accordingly, Counts 10-19 are **DISMISSED**.

### B. <u>Plaintiff's Failure to Accommodate and Prohibited Medical Exam Claims (Counts 3, 4, and 7) are Untimely</u>

Plaintiff brings each of her remaining claims under both the ADA and RA.[6] The parties agree that Plaintiff's claims under the ADA must have accrued no earlier than 300 days before the filing of Plaintiff's September 27, 2021, NYSDHR complaint. (Defs'. Mem., ECF 90-5 at 17; Pl.'s Opp., ECF 124 at 16). Conversely, the RA has no express statute of limitations. As a result, courts in this Circuit apply the statute of limitations for personal injury actions in the state where the discriminatory act took place. In New York, that is three years from the date Plaintiff commenced this federal action. *See Brown v. New York City Dep't of Educ.*, No. 20-CV-2424 (JGLC) (OTW), 2025 WL 3162072, at *4 (S.D.N.Y. Aug. 29, 2025) ("Plaintiff's ADA claims are subject to a 300-day statute of limitations, and RA claims are subject to a three-year limitations period." *(citing Morse v. Univ. of Vt.*, 973 F.2d 122, 127 (2d Cir. 1992)) (holding that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions).

---

[6] Count 4, which Plaintiff brings only under the ADA, is the only exception. (*See* TAC ¶139-144).

Because Plaintiff filed her NYSDHR complaint on September 27, 2021, (*see* TAC ¶115), any ADA claim that accrued before December 1, 2020, is time-barred. Because Plaintiff e-mailed the original Complaint in this action to the *Pro Se* Office on December 12, 2023, (*see* Compl., ECF 1), any RA claim that accrued before December 12, 2020, is also time-barred.

Based on the foregoing, Plaintiff's claims for a failure to accommodate (Counts 3 and 7) and for a prohibited medical examination (Count 4) are time-barred. As to the former, Plaintiff argues that her claim for failure to accommodate accrued "at the latest" on May 19, 2019, and "again every time she requested an accommodation." (ECF 124 at 27). But Plaintiff most recently requested a new supervisor on September 20, 2020. (TAC ¶91-93). Similarly, Plaintiff's claim for a prohibited medical examination accrued no later than Plaintiff's November 2019 medical exam. (TAC ¶¶80-81).

Plaintiff's remaining claims plead at least one discrete discriminatory act within the statutory period under either the ADA or the RA. Accordingly, I will now turn to the sufficiency of the remaining Counts.

### C.  The TAC Meets the Minimal Threshold Required to Plead Disability Discrimination (Counts 1 and 6)

Plaintiff asserts various causes of action for disability discrimination under both the RA and the ADA. To survive a motion to dismiss, Plaintiff must have pleaded facts that, if true, are sufficient to support at least a plausible inference that: "(1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability." *Crosby v. Stew Leonard's*

*Yonkers LLC,* 695 F. Supp. 3d 551, 566–67 (S.D.N.Y. 2023) (quoting *Dobbs v. NYU Langone Medical Ctr.*, No. 18-CV-1285 (MKV), 2021 WL 1177767, at *5 (S.D.N.Y. Mar. 29, 2021)). The same standard applies for claims brought under the RA. *See Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2020 WL 2836760, at *9 (S.D.N.Y. May 31, 2020).

Defendants do not dispute the first two elements, at least for the purposes of this motion,[7] and I find that Plaintiff has pleaded sufficient facts to support her allegation that she was qualified to be an ATR teacher as she had been employed in that job for over 15 years at the time she began her rotation at P.S. 006.[8] (TAC ¶127). Accordingly, I will only discuss the fourth element: Plaintiff must plausibly allege she experienced (1) an adverse employment action; and (2) it was because of her disability. *Crosby*, 695 F. Supp. 3d at 566–567.

The only potential adverse employment action(s) that occur on or after December 1, 2020 are: (1) on January 11 and 12, 2021, Garcia criticized Plaintiff for not "communicating to him about her students' attendance" even though she had done so previously (TAC ¶99-100); and (2) on March 10, 2021, Defendant Perez conducted and "informal observation" and rated Plaintiff as "ineffective" by "stat[ing] that [Plaintiff] was not servicing the needs of students" (TAC ¶101); and (3) on March 30, 2021, Defendants terminated Plaintiff's employment. (TAC ¶103).

    *i. <u>Adverse Employment Action</u>*

---

[7] Defendants appear to concede that Plaintiff is a person with a disability under the ADA and do not contest that they are a covered employer. (Defs'. Mem., ECF 90-5 at 15). Plaintiff asserts that the Defendants have conceded that Plaintiff is a person with a disability in their opposition (Pl.'s Opp., ECF 124 at 12). Defendants do not dispute Plaintiff's claim in their reply. (ECF 126).

[8] Defendants contend that Plaintiff's long history of disciplinary notices, infractions, tardiness to work, and substantial absenteeism render her unqualified to perform her job functions. (*See* Defs'. Mem., ECF 90-5 at 15-16). These arguments are a fact-based inquiry, however, are more appropriately considered on summary judgment.

"A plaintiff sustains an adverse employment action if . . . she endures a materially adverse change in the terms and conditions of employment." *McSweeney v. Cohen*, 776 F.Supp.3d 200, 236 (S.D.N.Y. 2025) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Plaintiff's first two allegations consist of a verbal reprimand and an ineffective performance evaluation on January 11-12 and March 10, 2021, respectively. Neither of these events resulted in any adverse material change to Plaintiff's terms or conditions of employment. *See Brown v. City of New York*, No. 14-CV-2668 (PAE), 2014 WL 5394962, at *8 (S.D.N.Y. Oct. 23, 2014) *aff'd*, 622 F. App'x 19 (2d Cir. 2015) ("[a] negative evaluation or official reprimand may, in some circumstances, constitute adverse employment action, but only when it triggers negative consequences to the conditions of employment." (cleaned up)). As for Plaintiff's termination, the parties do not dispute that it was an adverse employment action. However, Plaintiff must still allege facts that lead to a plausible inference of discrimination.

    ii.    <u>Inference of Discrimination</u>

Plaintiff must also plead that she suffered an adverse employment action *because* of her actual or perceived disability. *See Vega*, 801 F.3d at 87. Defendants incorrectly argue that Plaintiff has not met her burden here under the *McDonnell Douglas* burden shifting test. (Defs'. Mem., ECF 90-5 at 21). It is well settled that, at this stage, Plaintiff has only the minimal burden to plausibly allege that "the employer took adverse action against her at least in part for a discriminatory reason... by alleging facts that directly show discrimination or facts that

indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87; *see also Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 21 (2d Cir. 2015) (applying this standard to ADA discrimination claims).

Plaintiff alleges she was terminated on March 30, 2021, effective June 10, 2021. (TAC ¶103). She concludes her termination was discriminatory because "she was not provided the opportunity to have a formal observation or placed on any plan of support before she was terminated." (TAC ¶103). An allegation that the NYDOE did not follow proper procedures before terminating an employee is sufficient to support a plausible inference of discrimination. *See Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) ("[d]epartures from procedural regularity, such as a failure to collect all available evidence, can raise a question as to the good faith of the process where the departure may reasonably affect the decision" (quotation omitted)).

While Plaintiff's version of events surrounding her termination may or may not be substantiated by evidence at the discovery stage, Plaintiff has "nudged her claim" across the minimal threshold for pleading at this stage because plausibility is "not akin to a probability requirement." *Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, I find that Plaintiff adequately pleaded her claim for disability discrimination resulting from her termination.

C. **Plaintiff has Adequately Alleged a Hostile Work Environment Claim (Counts 2 and 8)**

To state a claim for hostile work environment, Plaintiff must allege facts leading to a plausible inference that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–321 (2d Cir. 2015). "The test...involves 'both objective and subjective components: the conduct

complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.'" *Chislett*, 157 F.4th at 187 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).) Finally, a plaintiff must also plead facts to support that the complained-of conduct was because of her disability and "a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004). A work environment's alleged hostility should be assessed based on the "totality of the circumstances." *Littlejohn*, 795 F.3d at 321. And, the Second Circuit has "repeatedly cautioned against setting the bar too high" on a motion to dismiss. *Terry,* 336 F.3d at 148.

Plaintiff's argument in support of her hostile work environment claims under the ADA and RA is that "[t]he 50+-page-long [sic] TAC is replete with incidents that span the entire period of Ms. Borjas's employment at P.S. 006, as nary a week (and certainly not a month) went by without a new incident of harassment." That is insufficiently vague and includes citations to the TAC so broad as to be useless. (*See* Pl.'s Opp., ECF 124 at 26) (citing TAC ¶¶60-77, 86-88, 103, 108-111). Nevertheless, the Court has scoured the complaint to identify the specific events Plaintiff identifies in the TAC, the majority of which concern Garcia:

- On March 24, 2021, Garcia logged into Plaintiff's virtual classroom, sat close to his screen, and Plaintiff had a panic attack. (TAC ¶102);
- In January 2021, Garcia criticized Plaintiff's work performance. (TAC ¶100);
- On September 16, 2020, Garcia logged in to Plaintiff's virtual classroom for 15 minutes and said, while leaving, "Goodbye Ms. Borjas, Love you Ms. Borjas." [sic] (TAC ¶92);
- On or about February 13, 2020, Garcia referred to Plaintiff as a "dangerous and/or not a well person" to unspecified "specific staff members."(TAC ¶109);
- On September 10, 2019, Garcia accused Plaintiff of "choosing" to have anxiety (TAC ¶ 71); and

12

- On September 3, 2019, Garcia "instructed" Plaintiff and another staff member to sit at the back of the auditorium during a staff meeting in which he referenced a recent school shooting and said "a lot of people are mentally ill and a lot of them are working with you, and you don't know it. You do not know when they will kill you."

(TAC ¶68).

Because Plaintiff's allegations date back beyond the statutory period for both the ADA and the RA, I will first determine if the continuing violations doctrine applies before analyzing the sufficiency of Plaintiff's claim.

> i. *The Continuing Violations Doctrine Permits the Court to Consider Acts of Discrimination Outside the Statutory Period*

Unlike the ADA and the RA, a hostile work environment claim "turns on the existence of a continuing violation, rather than on any individual offensive act.". *Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 369 (S.D.N.Y. 2000) (internal quotations omitted); *see also e.g.*, *Harewood v. N.Y.C. Dep't of Educ.*, No. 18-cv-05487 (KPF) (KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) (plaintiff's hostile work environment claim was not time-barred because the last act of an alleged "hostile and ageist work environment" occurred within the 300-day ADA statute of limitations). Accordingly, "[f]or a hostile-work-environment claim to survive a timeliness challenge, a plaintiff must plausibly allege that "(1) the acts occurring before the 300–day cutoff constitute part of the same actionable hostile work environment practice, and (2) at least one act contributing to the claim occur[ed] within the filing period." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 779 (S.D.N.Y. 2019) (quoting *Clarke v. InterContinental Hotels Grp., PLC*, No. 12-CV-2671 (JPO), 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) (internal quotation omitted)). "Furthermore, to be part of the same actionable hostile-work-environment practice, the timely offensive incident must be 'sufficiently related' to

incidents outside of the limitations period." *Id*. (citing *Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 (S.D.N.Y. 2016).

Here, Plaintiff's most recent allegation was on March 24, 2021, when Garcia appeared in Plaintiff's virtual classroom and logged out after Plaintiff had a panic attack, which is within the statutory period for both the ADA and the RA. Plaintiff has alleged incidents involving Garica and Plaintiff's anxiety symptoms back to September 3, 2020[9], which I find are sufficiently related to be actionable here.

ii. *Plaintiff has Plausibly Alleged Garcia's Harassment Was Objectively Pervasive and Severe.*

Although Plaintiff has pleaded several perceived instances of a hostile work environment created by Garcia's conduct, they have occurred about three times per school year over the 2019-2020 and 2020-2021 school years. While this level of conduct might not ordinarily be sufficiently "pervasive" to support a hostile work environment claim, Plaintiff spent as much as 10 months of this time on leave. *C.f. Muniz v. City of New York*, No. 20-CV-9223 (JPC), 2023 WL 6294169, at *14 (S.D.N.Y. Sept. 27, 2023) (dismissing hostile work environment at summary judgment where evidence only supported two comments over 9 months that bore any facial relation to age or race). Thus, Plaintiff has satisfied, for pleading purposes, the pleading requirement to establish that her alleged workplace harassment was "...pervasive enough that a reasonable person would find it hostile or abusive." *Chislett*, 157 F.4th at 187 (2d Cir. 2025).

---

[9] While Plaintiff makes allegations dating back to 2012, I have considered and rejected all of Plaintiff's remaining allegations before the 2019-2020 school year because I find Plaintiff's allegations around her "improper placement" at P.S. 006, (TAC ¶¶ 53-59), are insufficiently related to her hostile work environment claim, and Plaintiff's remaining allegations did not occur at P.S. 006.

Plaintiff's allegations are also objectively severe enough to plausibly allege Garcia's conduct "alter[ed] the conditions of [her] employment." *Littlejohn*, 795 F.3d at 320. Specifically, Plaintiff alleges a pattern of comments and practices by Garcia which caused her to suffer panic attacks and, in some instances, showed hostility to her disability. For example, Plaintiff alleges that: in 2019, Garcia accused her during a disciplinary meeting of "choosing" to have anxiety which caused her to immediately leave the school during the school day and not return to work the next day; (TAC ¶¶ 71,73); in February 2020, Garcia told other school staff that Plaintiff was "dangerous," and "not a well person" (TAC ¶109); and at the beginning of the 2020-2021 school year, after Plaintiff sought to be assigned a different supervisor, Garcia logged in to her virtual classroom and acted in ways that continued to intimidate her and trigger panic attacks. (TAC ¶¶91-92).

Conduct that is "facially neutral, can support a hostile work environment claim where there is also overt hostility..." *Lewis v. Roosevelt Island Operating Corp.*, 246 F.Supp.3d 979, 989 (2d Cir. 2017) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010). Here, even if Garcia's presence on the screen in Plaintiff's virtual classroom could be considered facially neutral, that conduct taken with Garcia's prior comments about Plaintiff's disability are sufficient to support a conclusion that the harassment was "of such quality or quantity that a reasonable employee would find the conditions of employment altered for the worse." *Id*. (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Moreover, Garcia's presence in Plaintiff's virtual classroom, together with his "Love you Ms. Borjas" remark, could be reasonably inferred as intended to provoke Ms. Borjas's reactions. *See also Patane* 508 F.3d at 114-115 (in gender discrimination case, Plaintiff pleaded facts "sufficient to allow a jury to find

15

much of Clark's complained of conduct particularly offensive to women and intended to provoke Plaintiff's reaction as a woman"). Moreover, even Garcia's remarks to other school staff about Plaintiff and her disability could contribute to a hostile work environment, even when, as is the case here, the conduct was not directed at her. *Id*. at 114. ("a plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was *specifically* aimed at her") (emphasis in original). Finally, when, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 187 (2d Cir. 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010).

Accordingly, since Plaintiff's numerous complaints about Garcia's conduct leave no question that she subjectively perceived her work environment to be abusive, and Plaintiff has pleaded sufficient facts that, if true, would lead to an inference that the complained of conduct was objectively severe or pervasive, and that Defendants created such an environment because of Plaintiff's disability, Plaintiff has adequately alleged a claim for hostile work environment.

### D. Plaintiff has Adequately Alleged Retaliation for Engaging in a Protected Activity (Counts 5 and 9)

To satisfactorily plead retaliation under the ADA and/or RA, a plaintiff must allege facts that permit the Court to draw a plausible inference that:

(1) she participated in a protected activity;
(2) the defendant knew of the protected activity;
(3) Defendant took an adverse employment action against Plaintiff; and
(4) a causal connection exists between the protected activity and the adverse employment action.

*Witcher v. New York City Dep't of Educ.*, No. 23-CV-0465, 2024 WL 3220264, at *2 (2d Cir. June 28, 2024) (summary order). Plaintiff has satisfied the first three elements by alleging that she

16

made complaints directly to the NYDOE about "disparate treatment" by Garcia, and about Garcia generally, in January and March 2021, respectively, and that she was terminated on March 30, 2021.

Accordingly, all that remains is for Plaintiff to satisfy the causation element either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319. On March 26, 2021, Plaintiff complained to the NYCDOE that Garcia harassed her on account of her anxiety. Plaintiff alleges that she was terminated on or about March 30, 2021. (TAC ¶103). The close temporal nexus between her last protected activity and her termination is sufficient to meet the minimal requirements for the Court to plausibly infer a causal relationship between the two. *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 (S.D.N.Y 2017) ("termination and withholding of wages are adverse acts for purposes of stating a retaliation claim"). Accordingly, Plaintiff has sufficiently alleged a retaliation claim based on her termination in response to her complaint(s) about Garcia.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part** and **Counts 3, 4, 7, and 10-19 are DISMISSED**. Defendants' motion to dismiss is otherwise **DENIED**. Plaintiff is directed to file a Fourth Amended Complaint, consistent with this Opinion, no later

than **April 30, 2026**. Claims arising under both the ADA and RA may be pleaded in a single count.[10]

Plaintiff's Second Amended Complaint and TAC have been permitted to be filed with redactions as of my April 30, 2025, Order. (ECF 131). The complaints will remain under provisional seal for 90 days from this Order. The parties should review the April Order and *Zhao v. Belok*, No. 24-CV-1793 (JHR) (JW), 2024 WL 1739911, at *2 (S.D.N.Y. Apr. 23, 2024), and consider whether the TAC and motion papers should remain under seal, and file any renewed motions to seal by April 30, 2026.

The stay of discovery is lifted. The parties are directed to meet and confer and file a new case management plan no later than **May 14, 2026,** including a proposed briefing schedule for any desired motions.

The Clerk of Court is respectfully directed to close ECF 90.

**SO ORDERED.**

/s/ Ona T. Wang

Dated: March 26, 2026
New York, New York

**Ona T. Wang**
United States Magistrate Judge

---

[10] To the extent Plaintiff's footnote at the end of her Opposition, (Pl.'s Opp., ECF 124 at 24 n.16) is a motion to amend by adding additional claims, it is insufficiently pleaded at this time. *See* Fed. R. Civ. P. 15(b)(2).